535 So.2d 1024 (1988)
STATE of Louisiana, Appellee,
v.
James L. MADISON, Appellant.
No. 19977-KA.
Court of Appeal of Louisiana, Second Circuit.
October 26, 1988.
*1025 Levy, James & Shealy by S. Andrew Shealy, Ruston, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Barbara B. Rutledge, Asst. Atty. Gen., New Orleans, T.J. Adkins, Dist. Atty., Dan J. Grady, III, Asst. Dist. Atty., Ruston, for appellee.
Before JASPER E. JONES, NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
The defendant, James L. Madison, appeals his conviction and sentence for theft of property in excess of $500.00, in violation of LSA-R.S. 14:67. He was sentenced to serve ten years at hard labor. For the reasons assigned below, we affirm the defendant's conviction and sentence.

FACTS
At about noon on March 24, 1987, Carol Saurage Coburn, a member of the loss prevention program at the Wal-Mart store in Ruston, Louisiana, observed several suspicious *1026 persons moving about the store.[1] The group consisted of a man, two women, and a small child of about two years of age. Despite the 75° temperature outside, the foursome were wearing heavy winter coats and jackets. Upon inquiry, Ms. Coburn learned from an employee at the service desk that she had seen these individuals in the store before, perhaps earlier in the day.
Suspicious, Ms. Coburn began to observe the group. She saw the defendant step up on a shelf, reach over to the next aisle, and pick up a camera in the electronics department. He also picked up a compact disc battery pack. He placed both items on a shelf and walked away. He positioned himself at one end of the aisle while one of the women (later identified as Cassie Ellie) positioned herself at the other end. Ms. Coburn then saw the other woman (later identified as the defendant's sister, Diane Madison) put the camera in her purse. Ms. Coburn also observed Ms. Madison and Ms. Ellie take several pairs of jeans off the racks in the clothing department, wad them up, and began to walk to another area of the department. They then tossed the jeans under the racks as though they suspected they were under surveillance.
When the group left the store, without paying for any merchandise, Ms. Coburn followed them into the parking lot. Ms. Coburn, who was pregnant at the time, did not want to confront the suspects alone. She saw the suspects, including the defendant, get into a white, 1976 Delta 88 Oldsmobile. She noted that the front tires had wire spoke wheelcovers, while the rear tires had regular hubcaps. The defendant then drove the vehicle off the Wal-Mart parking lot. Ms. Coburn immediately notified the police and gave them a detailed description of the car and its occupants. (The descriptions were of a black male wearing a heavy jacket, a black female wearing a pink dress and a fur coat, a black female wearing a gray jacket, and a small black child wearing a red jacket.)
The Ruston police department notified its officers that a shoplifting had occurred at the Wal-Mart store and relayed Ms. Coburn's detailed description of the suspects and their vehicle. Within minutes, the vehicle was discovered in a nearby parking lot of a K-Mart store.
Officer Bobby Richardson and Sergeant Wesley Harris determined that the car was unoccupied and decided to enter the K-Mart store to look for the suspects. As they approached the entrance, four persons who matched the descriptions of the suspects exited the store.
The police officers asked the suspects if they had any connection to the Oldsmobile. They denied any knowledge of the vehicle, and began to walk away. They claimed to be with someone who was parked in another area of the parking lot. The officers requested that the group wait until the Wal-Mart security personnel arrived.
Ms. Coburn and Maxine Jones, another Wal-Mart employee, arrived. They immediately identified the car. They also identified the suspects as being the persons who they had just observed at Wal-Mart. When police asked the suspects to identify themselves, they all gave what were later determined to be fictitious names.
The officers asked the defendant and the two women if they owned the vehicle. Each denied ownership and stated that they had no objections if the police searched the car. The officers opened the trunk, which had no locking mechanism. Inside the trunk were several items of merchandise bearing Wal-Mart price tags which were stamped with the Ruston store's number. Inventory of the items revealed that the total value of the merchandise was almost $600.00.
The defendant and his two female companions were arrested and charged with theft of property having a value of more than $500.00.
The defendant filed a pre-trial motion to suppress evidence, claiming that the warrantless search of the automobile was illegal, *1027 and consequently, the Wal-Mart merchandise recovered from the trunk should be suppressed. After a hearing on July 31, 1987, the trial court denied the defendant's motion.
Trial on the merits was held on September 22, 1987. The state presented the testimony of three witnesses: Ms. Coburn, the Wal-Mart loss prevention agent; Sergeant Harris; and Miss Ellie, one of the defendant's former co-defendants.
Ms. Coburn recounted her observations of the suspicious apparel and conduct of the defendant and his companions while in the Wal-Mart store. She testified that she saw the defendant obtain the camera and leave it on a shelf. She then observed the defendant's sister pick up the camera and put it in her purse. She also testified that she believed the group departed the store when they realized they were being observed.
Ms. Coburn positively identified the defendant as the man she observed in Wal-Mart, in the Oldsmobile and later in the K-Mart parking lot. She further testified that the items found in the trunk of the Oldsmobile were marked with the store number of the Ruston Wal-Mart store. She identified a list of the stolen items which she had prepared and verified that photographs were taken of the allegedly stolen items.[2] She also testified that the items of merchandise were returned to Wal-Mart.
Ms. Ellie, the defendant's girlfriend, testified that she had pled guilty to middle grade theft the day before the defendant's trial began, and that she had agreed to testify against the defendant on behalf of the state. She stated that she was present during the shoplifting episode, but denied active participation. She claimed that she merely stood around, holding her young son, and watched the defendant and his sister steal merchandise, including movies and clothing. She stated that she gave the police a fictitious name because the defendant instructed her to do so.
Ms. Ellie testified that the vehicle in which she, the Madisons, and her son were traveling the day of the theft belonged to Ms. Madison's boyfriend. On cross-examination, she stated that the car did not belong to the defendant, and she did not know when the items found in the trunk had been placed there.
Sergeant Harris testified that he was one of the first officers present in the K-Mart parking lot after the discovery of the white Oldsmobile. He testified that the car and the four persons who exited K-Mart together matched the description of the suspects and the vehicle involved in the reported Wal-Mart shoplifting. He stated that the suspects disavowed any connection to the car. The car trunk, which had no lock, was searched only after the defendant and his companions stated that they did not care if the police searched it. He verified that the items from Wal-Mart were found in the trunk of the car. He further identified the photographs of the car and the items found in the trunk.
Sergeant Harris also testified that, even though the car was released to family members of the registered owner, he had information from them that the car had been sold to the defendant. However, they claimed that the defendant had failed to pay for it. Since no documents concerning the sale were produced, they were allowed to reclaim the vehicle.
The defense presented no witnesses. The six-person jury found the defendant guilty of theft of property having a value of $500.00 or more. On October 6, 1987, a third felony offender bill was filed against the defendant. However, no further action was taken on this bill. On November 13, 1987, the defendant was sentenced to serve *1028 ten years at hard labor, the maximum sentence for theft.
The defendant appeals, asserting six assignments of error, several of which are interrelated. They are: (1) the trial court erred in overruling the defendant's pre-trial motion to suppress; (2) the trial court erred in allowing the state to admit "S-1", a list of the recovered items and their prices; (3) the trial court erred in admitting into evidence "S-2" and "S-3", photographs of the Oldsmobile; (4) the trial court erred in admitting into evidence "S-4" and "S-5", photographs of the stolen items; (5) the state failed to present sufficient evidence to support the defendant's conviction; and (6) the trial court erred in imposing an excessive sentence.

ASSIGNMENT NO. 1
The defendant argues that since the search of the trunk of the automobile was conducted without a warrant, the merchandise found therein was seized illegally. Thus, he reasons that the items were inadmissible against him.
Sergeant Harris testified at the hearing on the motion to suppress that the defendant, his companions, and the vehicle all matched the description he had received in connection with the Wal-Mart shoplifting incident. All the suspects denied any connection to the car. Initially, they also denied being in Wal-Mart. However, they finally admitted their presence there, but denied stealing anything.
Sergeant Harris testified further that the suspects stated that they did not care if he looked in the car. Sergeant Harris said he observed an envelope addressed to Diane Madison on the front seat of the car. All of the suspects claimed that they had no knowledge of anyone by that name.
The Wal-Mart loss prevention officers arrived and positively identified the suspects and the car. Whereupon, the suspects were placed under arrest. Sergeant Harris called for a tow truck to transport the vehicle in compliance with standard police impoundment procedures. Sergeant Harris and Officer C.W. Biddick opened the trunk, which had a hole where the locking mechanism should have been. Officer Biddick testified that they inserted a screwdriver into the hole and turned it like a key. Upon opening the trunk, they discovered the numerous items of Wal-Mart merchandise.
The defendant cites three U.S. Supreme Court decisions in support of his argument that the search was conducted illegally. An examination of these cases demonstrates that they are inapposite. Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948), involved a search of immovable property. In Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960), and Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), the law enforcement officers had no probable cause to believe the defendant had committed any crime.
In this case, because the search of the vehicle was conducted without a warrant, the burden of proof was upon the state to affirmatively show that the search and seizure was justified under an exception to the warrant requirements of U.S. Constitutional Amendment IV and Louisiana Constitution Art. I, Sec. 5 (1974). State v. Colvin, 494 So.2d 1357 (La. App. 2d Cir.1986), writ denied 497 So.2d 311 (La. 1986).
The jurisprudence has established the "automobile exception", based upon probable cause and exigent circumstances. In State v. Tatum, 466 So.2d 29 (La.1985), the Louisiana Supreme Court discussed this exception:
For constitutional purposes, there is no difference between on the one hand, seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment and the Louisiana Constitution. [Citations omitted].
Furthermore, prior Louisiana jurisprudence has held that a search warrant is not necessary where there is probable cause to search an automobile for contraband or evidence of a crime and there are *1029 exigent circumstances requiring an immediate search. [Citations omitted].
Exigent circumstances has been defined as the impracticability of obtaining a warrant due to the possibility that the car could be moved either by its occupants if not arrested, or by someone else. An immediate warrantless search is therefore constitutionally permissible when "the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained." [Citations omitted].
As in the Colvin case, probable cause to search the vehicle existed because the suspects and the vehicle matched the description broadcast to the police officers. Furthermore, Ms. Coburn had witnessed the theft of at least one item by the three-adult team, which displayed the finesse of a professional shoplifting operation. Sufficient time elapsed between their departure from Wal-Mart and the police sighting of their car at K-Mart for them to remove the stolen items from their persons and conceal them in the trunk. Also, the group was spotted by the police in close proximity in time and location to the shoplifting incident.
Exigent circumstances existed because the vehicle was located in a public parking lot, and it was accessible to anyone who might elect to remove evidence from the unlocked trunk. (Sergeant Harris also indicated that some of the car doors would not properly lock.) The defendant and his companions had earlier informed the officers that another person was waiting for them in another part of the parking lot. The police had no way of knowing whether such a person existed or was, in fact, present. Furthermore, the three prisoners and the child had to be transported separately, and only three officers were present. In the event of undue delay in the arrival of the tow truck, the police officers were faced with the possibility of having to leave the car unattended.
Therefore, it is clear that the officers were fully justified in searching the vehicle pursuant to the automobile exception to the warrant requirement.
Further, we also find that the search was valid under the "consent" exception. The defendant disclaimed any connection to the vehicle and stated that he consequently did not care whether the vehicle was searched or not. Although the defendant denied any connection to the automobile, Ms. Coburn had observed the defendant drive the vehicle off the Wal-Mart parking lot, and the defendant was stopped by the police as he exited the K-Mart store where the car was discovered by the police. The police had probable cause to believe the defendant and the vehicle had been used in the commission of the crime. They also had strong reason to believe that the car belonged to the defendant and his companions, who said they had no objection to the police searching the automobile. We construe the defendant's statement as consent to search, even though that "consent" was accompanied by a disclaimer of any ownership or connection to the vehicle. See State v. Coleman, 412 So.2d 532 (La.1982).
We find that the police officers permissibly searched the vehicle in the K-Mart parking lot under both the automobile exception and the consent exception to the requirement for a search warrant. The trial court correctly overruled the motion to suppress evidence. Thus, this assignment of error is without merit.

ASSIGNMENTS NO. 2 & NO. 4
Inasmuch as the defendant's second and fourth assignments of error are closely connected, we will discuss them together. The defendant argues that the trial court erred in allowing the state to file into evidence and present to the jury a list of the Wal-Mart items recovered from the trunk and their prices, and photographs of the items in lieu of the objects themselves. The defendant argues that under the "best evidence" rule the state was required to admit the items of merchandise. LSA-R.S. 15:436. The defendant contends that the state's failure to introduce the actual stolen items deprived the defendant of his right to confrontation and the ability to effectively cross-examine witnesses.
*1030 LSA-R.S. 15:436 provides that "the best evidence which from the nature of the case must be supposed to exist, and which is within a party's control, must be produced."
LSA-R.S. 15:436.1 provides, as follows:
A. A photograph of property alleged to be the object of a theft, otherwise admissible, may be admitted as evidence without regard to the availability of the property itself.
B. An affidavit of the value and ownership of property which is alleged to be the object of a theft shall be admissible in evidence under the following circumstances:
(1) The affidavit shall be upon personal knowledge and shall state the basis for such knowledge;
(2) The affidavit shall be paraphed for identification with the photograph taken pursuant to Subsection A, and
(3) The state shall give written notice of its intent to introduce the affidavit, along with a copy of the affidavit and photograph, not less than ten days prior to commencement of the trial.
C. An affidavit admitted pursuant to Subsection B shall be deemed prima facie evidence of the value and ownership of the property alleged to be the object of a theft. Provided, however, that if the defendant files a written objection to the admission of the affidavit within three days prior to the commencement of trial, the affidavit shall not be admissible and shall not be deemed to be prima facie evidence of the value and ownership of the property.
The "best evidence" rule must be applied sensibly and with reason. State v. Gaskin, 412 So.2d 1007 (La.1982). As demonstrated by LSA-R.S. 15:436.1(A) and the jurisprudence, photographs may be introduced in lieu of the actual, physical items alleged to be the objects of a theft. State v. Bates, 397 So.2d 1331 (La.1981); State v. Bell, 404 So.2d 974 (La.1981); State v. Lowe, 485 So.2d 99 (La. App. 2d Cir.1986), writ denied 488 So.2d 199 (La.1986). However, if the defendant can show prejudice by this practice, then the photographs will be inadmissible. Gaskin, supra; State v. King, 520 So.2d 1260 (La. App. 5th Cir.1988).
The defendant argues further that the hand-written list of the objects and their prices which was compiled by Ms. Coburn in the presence of Sgt. Harris must comply with the provisions of LSA-R.S. 15:436.1(B) and (C). The defendant particularly complains of the state's failure to comply with the notice provision. However, these provisions obviously contemplate the use of an affidavit in lieu of the testimony of an in-court witness to establish the ownership and value of the items. Consequently, the notice provisions are inapplicable in the present case where testimony as to these facts was presented by Ms. Coburn who was subject to full cross-examination.
The defendant argues that he was prejudiced by the admission of the list and the photographs because it deprived him of the chance to examine the price tags and test the veracity of Ms. Coburn's testimony. However, we note that Ms. Coburn testified knowledgeably and in some detail as to the contents of the tags and the significance of the coding.
We find that the list and the photographs were properly admitted. The photographs constituted the "best evidence" available under LSA-R.S. 15:436.1. As the list and photographs were admitted in conjunction with the testimony of witnesses available for cross-examination to test their knowledge in relation to the exhibits, the defendant was not prejudiced.
Assignments of error numbers two and four are meritless.

ASSIGNMENT NO. 3
The defendant argues that the trial court erred in admitting "S-2" and "S-3", which were photographs of the vehicle in which the stolen items were found. He argues that the photographs were neither relevant nor material.
However, examination of the record reveals that the defendant made no objection to the admission of these photographs into evidence. Consequently, the matter is not *1031 properly before us on appeal, and we will not entertain this assignment of error.

ASSIGNMENT NO. 5
The defendant argues in his fifth assignment of error that the state failed to present sufficient evidence to support his conviction. In particular, he contends that the state failed to establish beyond a reasonable doubt that there was a misappropriation or taking of something of value without the owner's consent. He attacks the testimony of Ms. Ellie, who presented direct evidence that the defendant stole items from Wal-Mart, pointing out the items she recited as being stolen did not coincide with the list of items discovered in the trunk of the car. Additionally, the defendant argues that the state failed to establish that he placed the items in the trunk of the car, which he did not own.
The elements of the crime of theft which the state must prove are: (1) a misappropriation or taking of, (2) anything of value, (3) which belongs to another, (4) without the consent of the other, (5) with an intent to deprive the other permanently of the thing taken, and (6) the value of the thing taken. State v. Farris, 514 So.2d 519 (La.App. 3rd Cir.1987).
In reviewing the sufficiency of evidence to support a conviction, the reviewing court must examine the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Although LSA-R.S. 15:438 provides that when circumstantial evidence is used to convict, every reasonable hypothesis of innocence must be excluded, this statutory rule is not a separate test from the Jackson standard and does not establish a stricter standard of review in circumstantial evidence cases. Rather, all the evidence, both direct and circumstantial, must be sufficient under the Jackson standard to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Porretto, 468 So.2d 1142 (La.1985); State v. Feraci, 499 So.2d 1218 (La. App. 4th Cir.1986), writ denied 503 So.2d 490 (La.1987); State v. Arrington, 514 So.2d 675 (La.App. 2d Cir.1987).
The defendant was convicted on the basis of both direct and circumstantial evidence. The State presented direct evidence that the items which were recovered belonged to Wal-Mart and their combined value exceeded $500.00. Ms. Coburn testified that she saw the defendant obtain a camera in an unorthodox manner and place it where his sister could pick it up and conceal it in her purse. A trier of fact could have reasonably believed that this demonstrated that they were working in concert to shoplift items. We further note that the defendant and his companions had apparently been in the store for some period of time and had been in several departments before they came under the surveillance of Ms. Coburn.
Ms. Coburn observed the group leave the store. They did not stop at the check-out counter to pay for any merchandise. She then saw them enter and drive away in the white Oldsmobile, a car with which they later denied having any contact.
The defendant argues that no testimony established who placed the Wal-Mart items in the car trunk. However, two cameras of the same type as the one Ms. Coburn saw being purloined were discovered in the trunk. Despite Ms. Ellie's testimony that she couldn't say whether the items in the trunk were there prior to their stop at Wal-Mart, a rational trier of fact could conclude that the defendant and his accomplices placed the items in the trunk. Additionally, no sales receipts for the items found in the trunk were produced, nor were the items sacked or in bags, as would normally be expected had the merchandise been purchased.
Several other circumstances reveal the defendant's guilt. All members of the group were wearing heavy jackets on a warm day. We consider this factor in conjunction with the defendant's behavior. When he and his companions encountered the police outside the K-Mart store, they all claimed to have no connection to the *1032 Oldsmobile. When the police officers saw an envelope addressed to Diane Madison in the car and asked them if they knew such a person, all denied any knowledge when, in fact, she was the defendant's sister and was present. Initially, they all denied being in Wal-Mart, then admitted that they had been there. Finally, all of the adults gave fictitious names to the authorities. (Several weeks passed before the police discovered the defendant's true identity.)
We find that the state carried its burden of proving that the defendant was part of a shoplifting scheme and that he was a principal, LSA-R.S. 14:24, in the theft of merchandise from Wal-Mart valued at more than $500.00. His conduct was consistent with that of a guilty party to such an enterprise. He denied his relationship with his own sister, Diane Madison, the addressee of the envelope found in the Oldsmobile, and lied to the police when asked to identify himself.
Ms. Ellie, the defendant's former girlfriend and co-defendant, testified for the state. Although her testimony tended to be somewhat vague and self-serving, nevertheless, she testified that the defendant and his group were involved in a shoplifting scheme and some of the items which she recalled being stolen were the same type as those found in the trunk of the Oldsmobile. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Rogers, 494 So.2d 1251 (La. App. 2d Cir.1986), writ denied 499 So.2d 83 (La.1987). Obviously, the jury believed Ms. Ellie's general account of the theft scheme, even though there were some discrepencies in her recollections of the exact items stolen.
The evidence outlined above was such that the jury could conclude, beyond a reasonable doubt, the existence of the following scenario: the defendant and his two female companions, all acting as principals, traveled to the Wal-Mart store in Ruston for the purpose of engaging in theft by shoplifting. They wore coats, even though the weather was warm, for the purpose of concealing merchandise as they exited the store without paying for the items. Ms. Ellie's small child accompanied her, as an additional "cover" for the illegal activities of the group. While in the Wal-Mart store, the defendant and his companions committed the theft of numerous items of merchandise, as evidenced by the theft of the camera. It was moved from one shelf to another by the defendant and then concealed in the purse of the defendant's sister, while the defendant kept watch from one end of the aisle and Ms. Ellis kept watch from the other end. When the defendant and his companions became concerned that they were under surveillance by Ms. Coburn, they departed the premises with merchandise concealed under their outer clothing and returned to the white Oldsmobile in the parking lot. They entered the vehicle and then drove away while Ms. Coburn observed their activities.
The defendant and his companions then drove to the K-Mart parking lot. At some point, they removed from their clothing the items which they had stolen from Wal-Mart and placed them in the trunk of the Oldsmobile. They entered the K-Mart store. Shortly thereafter, upon exiting the store, they were approached by the police officers. At this time, the defendant and his companions denied any connection to the Oldsmobile, denied knowing Diane Madison and all gave fictitious names, all of which factors demonstrated the guilty knowledge of the defendant and his companions and their culpability in the theft of the merchandise which had just occurred at the Wal-Mart store. When the police officers found the merchandise, it was not bagged or sacked, and neither the defendant nor his companions could produce any sales receipts.
Considering the totality of the circumstances, including the direct evidence provided by Ms. Ellie relative to the shoplifting scheme in which the defendant participated, the jury was presented with sufficient evidence from which they could conclude, beyond a reasonable doubt, that the defendant was guilty as charged. Furthermore, we find that the overall circumstances were such that every reasonable hypothesis of innocence was excluded.
This assignment of error is without merit.

*1033 ASSIGNMENT NO. 6
In his final assignment of error, the defendant asserts the trial court erred in imposing an excessive sentence and in failing to comply with the guidelines of LSA-C.Cr.P. Art. 894.1. He argues that the crime of shoplifting did not threaten serious harm and there were no aggravating circumstances.
In determining whether a sentence is excessive, the test imposed by the reviewing court is two-pronged. First, the record must show that the trial court took cognizance of the factors set forth in LSA-C.Cr.P. Art. 894.1 which enumerates criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied 439 So.2d 1074 (La.1983); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied 435 So.2d 438 (La. 1983).
While the trial court need not articulate every aggravating and mitigating circumstance outlined in LSA-C.Cr.P. Art. 894.1, the record must reflect that the court adequately considered those guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir. 1983), writ denied 438 So.2d 1112 (La.1983).
After determining whether the provisions of LSA-C.Cr.P. Art. 894.1 have been complied with by the trial court, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.
The sentencing court is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing court. State v. Square, 433 So.2d 104 (La.1983); State v. Hammonds, supra; State v. Brooks, 431 So.2d 865 (La. App. 2d Cir.1983).
A sentence is unconstitutionally excessive in violation of La. Const. 1974 Art. 1, § 20 if the sentence is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, supra. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied 435 So.2d 433 (La.1983).
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions, but may properly review all prior criminal activity. State v. Palmer, 448 So.2d 765 (La. App. 2d Cir.1984), writ denied 452 So.2d 695 (La.1984). As a general rule, maximum or near maximum sentences are to be reserved for the worst offenders and the worst offenses. State v. Lathers, 444 So. 2d 96 (La.1983); State v. Telsee, 425 So.2d 1251 (La.1983); State v. Williams, 454 So. 2d 1287 (La. App. 2d Cir.1984).
The trial court considered the extensive previous criminal record of the defendant in imposing the maximum sentence for theft. The trial court found that there was an undue risk of reoccurring offenses, that the defendant needed correctional treatment, and that a lesser sentence would deprecate the seriousness of the offense.
The 31-year-old defendant's previous record indicates numerous offenses. In 1973, he was charged with armed robbery. He pled guilty to a reduced charge of theft and was sentenced to five years at hard labor. However, he was paroled in 1975. In 1977, his parole was revoked and he served the balance of his sentence. In 1981, he was arrested for breaking and entering in Youngstown, Ohio. He forfeited bail on that charge.
In 1982, the defendant was arrested six times for various charges of theft, theft by shoplifting, and resisting an officer. He also pled guilty in 1982 to possession of marijuana. The record also reveals that there were three additional theft convictions in 1983.
*1034 In 1984, the defendant was charged with armed robbery, but pled guilty to middle grade theft. He was sentenced to two years at hard labor. He was released on good time discharge in October of 1985. In December of 1985, the defendant was arrested for felony theft. He pled guilty to misdemeanor theft. In 1986, he was arrested for theft and felony theft, and in January, 1987 he was arrested for theft by shoplifting.
The state filed a third felony offender bill against the defendant. In his brief, the prosecutor in this case stated that the assistant district attorney who represented the state at the sentencing was unaware of the bill. The prosecutor also stated in his brief that no subsequent action was taken on the multiple offender bill because the state was satisfied with the imposition of the maximum sentence of ten years at hard labor.
In view of the defendant's extensive record, his failure to respond to previous correctional treatment, and the very strong likelihood of further criminal activity, we agree with the trial court's imposition of the maximum sentence for theft of ten years at hard labor. The defendant can be accurately described as a career criminal, thief and shoplifter. By virtue of his repetitive conduct of stealing and shoplifting, we find that the defendant clearly falls within the category of "the worst offenders" for whom maximum sentences are reserved. In the present offense, not only were his sister and girlfriend parties to the crime, but they also involved a minor child of approximately two years. Such conduct is reprehensible.
This assignment of error is meritless.

CONCLUSION
Having found that the defendant's assignments of error are without merit, we affirm the defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] At various points in the record, this witness is referred to alternatively as Ms. Saurage or Ms. Coburn. For clarity, we refer to her as "Ms. Coburn".
[2] The list consisted of the following items and prices: six compact discs, each priced at $15.46 and one compact disc priced at $9.46; six cartons of Marlboro cigarettes, each carton priced at $9.87; one pair of ladies' shoes for $9.96; two Kodak VR 35 cameras, priced at $134.86 each; one video tape priced at $22.76; two video tapes valued at $27.76 each; one video tape priced at $18.83; one video tape priced at $27.76; and one Sony battery pack for a compact disc player valued at $30.00. By Ms. Coburn's calculations, the total value of these items was $595.89. However, we calculate the exact value to be $595.99.