878 So.2d 869 (2004)
STATE of Louisiana, Appellee
v.
Johnie A. JOHNSON, Appellant.
No. 38,415-KA.
Court of Appeal of Louisiana, Second Circuit.
July 14, 2004.
Rehearing Denied August 12, 2004.
*870 Stephen A. Glassell, Shreveport, for Appellant.
Paul J. Carmouche, District Attorney, J. Thomas Butler, Laura O. Wingate, Sean D. Miller, Assistant District Attorneys, for Appellee.
Before BROWN, STEWART and CARAWAY, JJ.
STEWART, J.
The defendant, Johnie Johnson ("Johnson"), was convicted of a responsive verdict of manslaughter in a bench trial. The trial court sentenced him to 40 years at hard labor, the maximum sentence. On appeal, defense counsel raises only sentencing errors. However, finding no error by the trial court, we affirm the defendant's conviction and sentence.

FACTS
On September 29, 2001, officers were alerted via a 911 call that Jami Hairston ("Hairston") had been kidnapped from her residence in Blanchard. The emergency call was placed by her teenage son, Eugene Murphy. He informed the dispatcher that his mother was taken by Johnie Johnson, her former live-in boyfriend. Officers began looking for the suspect's truck. Before it was found or the officers reached the residence, the young man called back to say that his mother was in the backyard and that she was dead.
When the officers arrived, they discovered that Hairston (also referred to in the record as Jamie Hairston and Jami Harriston) had been shot in the side and the head. In the meantime, Johnson, formerly a Caddo Parish sheriff's deputy, called a fellow deputy and told him that he had just shot his former girlfriend. He also called his former wife's residence and told his daughter, who answered the telephone, that he had killed Hairston. When his former wife came to the telephone, he gave her specific details about the events leading up to the killing.
He agreed to meet the deputy at his parents' residence where he was taken into custody without incident. He was subsequently charged with second degree murder and elected to have a bench trial after waiving his right to a trial by jury on the record.
Hairston and Johnson had lived together for about four years before they broke up in late August of 2001. However, on September 9, 2001, Johnson came to the house *871 to finish moving the remainder of his property. As he and Hairston stood in the driveway, they began to argue. Eugene begged Johnson to leave and threatened to call the sheriff; however, Johnson responded that if the sheriff showed up, he would "put a bullet between his eyes." Apparently, this was not the first time that Johnson had made such threats concerning law enforcement or concerning other men with whom he thought Hairston was involved.
At trial, Eugene testified about the relationship between his mother and the defendant. He gave details of the day of the killing. He stated that on the day of the murder, his mother came in the door being followed by Johnson. Her hair was messed up and her face was red as she told him to get his gun and call 911. However, Johnson grabbed her and carried her back outside. As Eugene went to get his gun, he saw Johnson's truck leaving.
Johnson testified on his own behalf. He explained that his relationship with the victim began when he was summoned to her residence on a domestic disturbance call involving a prior live-in boyfriend. He admitted that he left his wife and became estranged from his parents to move in with the victim and pursue this relationship. However, Johnson blamed Hairston for ruining his marriage, finances, and career, and he determined that he was not going to let her ruin him further. He asserted that he killed his former girlfriend because she initiated sex with him while they were in the shed in the backyard and then told him she was going to report that he raped her.
The trial judge found Johnson guilty of a responsive verdict of manslaughter. The trial court sentenced him to the maximum term of 40 years at hard labor. The trial court denied a motion to reconsider sentence and this appeal ensued.

DISCUSSION

Excessive Sentence
The substance of Johnson's three assignments of error on appeal is the alleged excessiveness of the trial court's sentence. He asserts that the circumstances of this case do not merit the maximum sentence for manslaughter. He argues that the trial court erroneously put weight on the method of the shooting and the fact that he did not stay away from the victim after the couple ceased living together.
The state argues that the trial court knowingly spared Johnson of a life sentence by returning a manslaughter verdict, and that the trial judge thoroughly considered all the testimony and circumstances surrounding the case when he gave the maximum sentence.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). In the instant case, the record shows an adequate factual basis for the sentence imposed.
*872 Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. State v. Grissom, 29,718 (La.App.2d Cir.8/20/97), 700 So.2d 541; State v. Walker, 573 So.2d 631 (La.App. 2d Cir.1991).
Although Johnson may be correct in stating that the trial judge did not enumerate or specifically discuss the factors found in La. C. Cr. P. art. 894.1 during the sentencing hearing, the record is replete with evidence that supports the imposition of the maximum sentence by the trial judge. In fact, the trial judge stated he had considered the testimony and the circumstances that gave rise to this murder. Prior to imposing sentence, the court heard extensive testimony from both the state and the defense.
The remarks made by the judge indicate that he found no mitigating circumstances. He also noted that although he had ruled that the killing was manslaughter, it was a homicide that impacted not only the victim's life, but her family's as well. The victim's family members read statements outlining the impact that her death had on them, particularly the victim's two sons and her invalid father. Of particular note is the fact that the trial judge stated that the defendant should have seen that this situation would be "blowing up miles before it got to this point."
He also noted that the defendant had shown no remorse. The record shows that he carried the victim out of her house, as she begged him to stop, and after she had told her son to get a gun and call 911. Once outside, he held her by the arm hard enough to cause severe bruising and shot her first in the side and then in the head. He then left without rendering any aid or calling to report that she needed assistance.
More important, however, are the judge's remarks regarding why he was not going to give him a lighter sentence. He stated that "more tragic results would occur." The judge was obviously referring to the behavior of the defendant in weeks prior to the killing. Johnson had lived with the victim for over four years and had moved out of her residence about a month before this incident. Approximately three weeks before the killing, he had returned to the residence. After a heated argument, the victim had called 911. Several witnesses testified that he had made threats to kill his boss, the sheriff, because he thought the victim might be having a relationship with him. He also thought that she might be having relations with the man who owned the health club where the victim worked out and another male friend of the victim, and had threatened to kill them.
Not only did Johnson admit at the sentencing hearing that he had indeed threatened to kill some of these people, he also admitted that he had indicated he would not be taken into custody but would die a "death by cop." Testimony showed that he discussed this with another officer and *873 this behavior led to his subsequent dismissal from the sheriff's office. This scenario certainly gives plenty of evidence to support the judge's concern that this career law enforcement officer was truly a dangerous man who had no respect for human life.
During the sentencing hearing, the defense counsel tried to show that other defendants had received light sentences in similar situations. State v. Telsee, 425 So.2d 1251 (La.1983), indicates that this comparison of sentences is a way to make sure that the maximum sentences are reserved for the worst offenders. That court stated:
Another factor is comparison of the defendant's punishment with the sentences imposed for similar crimes by the same court and other courts. Rummel v. Estelle, supra, 445 U.S. 263 at 295, 100 S.Ct. 1133 at 1150, 63 L.Ed.2d 382 (1980), Powell, J., dissenting; Coker v. Georgia, supra, 433 U.S. 584 at 593-94, 97 S. CT. 2861 at 2866-67, 53 L.Ed.2d 982 (1977); Gregg v. Georgia, supra, 428 U.S. 153 at 179-80, 96 S. CT. 2909 at 2928, 49 L.Ed.2d 859 (1976); State v. Sims, supra, 410 So.2d 1082 (La.1982); State v. Williams, supra, 397 So.2d 1287 (La.1981). Such a comparison helps to assure that a defendant's sentence will be proportional in comparison with other offenders  that the maximum sentences will be reserved for the most egregious or blameworthy of offenders, and that others of similar conduct will not receive sentences lighter than the defendant's. [FN2] Cf. State v. Jones, supra, 398 So.2d 1049 (La.1981). See Terrebonne v. Blackburn, 646 F.2d 997, 1006 (5th Cir.1981), Johnson, J. dissenting; Hart v. Coiner, supra, 483 F.2d 136 (4th Cir.1973).
It should be noted that research into this comparison does not yield much since the maximum sentence for manslaughter was raised to 40 years only in 1992. However, this court since that time has upheld the maximum sentence decisions of trial courts. This comparison shows that the maximum sentences were given in situations similar to Johnson's conduct.
In State v. Hudson, 33,357 (La.App.2d Cir.5/10/00), 760 So.2d 591, a 25- year-old man was given 40 years for killing a male acquaintance who made a sexual overture to him. He had no prior criminal history.
In State v. Hall, 36,335 (La.App.2d Cir.9/18/02), 828 So.2d 120, the 58- year-old appellant's maximum sentence was upheld in the conviction for killing his girlfriend with whom he had lived for 15 years. His prior criminal history included convictions for battery, theft, and simple robbery.
In State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, this court upheld the 40-year sentence where the defendant had kidnapped the victim and killed him as part of a plan to commit robbery. This defendant had no adult criminal history.
This court stated in Black, supra, that:
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Madison, 535 So.2d 1024 (La.App. 2d Cir.1988).
This court will not disturb the trial court's order that gives Johnson the maximum sentence. Johnson's behavior before the incident and at the time of the killing showed that he had little, if any, regard for human life or the law, despite his career as a law officer. He received great lenience from the court by being convicted of the lesser crime of manslaughter instead of second degree murder. The sentence is *874 harsh, but the sentence imposed is lawful. Considering this record and the totality of the circumstances of this case, the sentence imposed is neither grossly disproportionate to the severity of the offense of conviction nor is it shocking to the sense of justice. There is no showing of an abuse of the district court's discretion in the imposition of this sentence which is not constitutionally excessive.

CONCLUSION
We find no error in the trial court's imposition of the maximum sentence of 40 years for manslaughter under the facts of this case. The conviction and sentence are affirmed.
AFFIRMED.
BROWN, C.J., concurs with written reasons.
BROWN, C.J., Concurring.
At sentencing the trial court took a view inconsistent with its manslaughter verdict. The court moved from finding provocation and sudden passion on defendant's part to a Mafia-style killing. This appeal is based entirely upon this inconsistency.
According to defendant, the victim had asked him to bring over her son's fishing gear. While at the victim's home, defendant readied for removal a shed he owned. He also brought the payment books for her car and breast implants. Defendant told the victim he would not continue to pay her debts. They went to the shed and a sexual act occurred. Afterwards, the victim told him she was going to claim rape and have him arrested. Defendant follows her to the house where she told her son to get a gun and call 911. Defendant's gun was in his truck. Defendant grabs the victim, goes to his truck, gets his gun, and shoots her twice in rapid fire. Defendant leaves, calls a Caddo Parish Sheriff's Deputy, reports the shooting, and surrenders without incident.
Defendant, who was charged with second degree murder, waived trial by jury. At a bench trial, he is found guilty of manslaughter. The trial court stated that it believed defendant's story of consensual sex and the victim's threat to falsely claim rape. Specifically, the trial court concluded that "[it was] of the opinion that this [shooting] was a sudden thought to kill her, that he was provoked enough to cause his blood to boil in sudden passion." Defendant does not appeal this verdict.
As an experienced law officer, defendant should have seen this coming. He met the victim on a call. She was upset because a former live-in boyfriend had not been arrested on a domestic complaint. Thereafter, while living with George Rankin, she initiated contact with defendant, who was married, father of twins, and working three jobs. Defendant left his family and moved in with the victim. What she did with defendant, she did to him. In August, she met Scott Kelly and began a relationship with him. Defendant moved out in September. Once without debt, defendant is now broke and fired from his position as a deputy. The atmosphere is stressful and explosive. It is an old story repeated too often.
At sentencing the trial court said, "One shot to the body and one shot to the head. That's more Mafia training than law enforcement training." That is also murder rather than manslaughter. It is the maximum sentence for manslaughter to which defendant objects.
It is difficult to resolve the verdict and sentencing statements of the trial court. An unnecessary death has occurred which, even under defendant's version, could have been murder. I will not look beyond the trial court's discretion to sentence within the statutory range.
*875 APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, GASKINS and CARAWAY, JJ.
Rehearing denied.