752 So.2d 318 (2000)
STATE of Louisiana
v.
Troy THOMAS.
No. 99-KA-1955.
Court of Appeal of Louisiana, Fourth Circuit.
January 26, 2000.
*319 Menette W. Burns, Louisiana Appellate Project, Covington, Louisiana, Counsel for Defendant-Appellant.
Harry F. Connick, District Attorney of Orleans Parish, Cate L. Bartholomew, Assistant District Attorney, New Orleans, Louisiana, Counsel for State-Appellee.
Court composed of Judge WILLIAM H. BYRNES, III, Judge MOON LANDRIEU, Judge DENNIS R. BAGNERIS, Sr.
BYRNES, Judge.
On January 11, 1999, defendant Troy Thomas was charged by bill of information with violating La. R.S. 14:62, relative to simple burglary of an automobile belonging to A.J. Dohman Chevrolet. At his arraignment on January 14, 1999, defendant pled not guilty. On January 21, 1999, defendant received a copy of the police report and withdrew his motion for a preliminary hearing and his discovery motions. Prior to trial on February 2, 1999, the State amended the bill of information to charge the defendant with violating La. R.S. 14:69, relative to illegal possession of stolen property having a value of five hundred dollars ($500.00) or more. The record *320 does not reflect that defendant was ever re-arraigned for the new trial. However, the new bill of information was read to the jury; and in its opening statement the State indicated that the issue was possession of a stolen vehicle that was worth more than five hundred dollars.[1]
A six-member jury found defendant guilty as charged. The trial court ordered a pre-sentencing investigation into the background of the defendant. On April 5, 1999, the trial court sentenced defendant to serve five years at hard labor in the custody of the Department of Corrections, with credit for time served. The State filed a multiple bill charging defendant with being a multiple offender. Defendant pled not guilty to the multiple bill and filed a motion to reconsider sentence, which the trial court denied. Defendant's motion for appeal was granted.
On June 15, 1999, the State admitted that defendant was not a multiple offender. The court then granted defendant's motion to reconsider sentence and again sentenced defendant to five years at hard labor; however, the trial court suspended the sentence and placed defendant on five years active probation. The court imposed special conditions of probation, specifically ordering defendant to report to the Criminal Court Drug Testing Department and submit to twenty urine tests. The court also ordered defendant to obtain substance abuse counseling and to maintain full-time employment and to be evaluated and treated for gambling-related problems. Finally, the court ordered defendant to pay one thousand dollars to the judicial expense fund; fifty dollars to the Louisiana Commission on Law Enforcement; fifty dollars to the Crime Victims' Reparation Board; and twenty dollars per month to the Department of Probation to help offset the cost of supervision. Court costs, however, were waived due to defendant's indigence. On June 15, 1999, the defendant paid all fines and fees imposed by the court.

STATEMENT OF FACTS:
Mr. Joey Dohman, the general manager in charge of fixed operations and personnel of a car dealership located in Morgan City, testified at trial that he personally checked a white 1999 Chevrolet Blazer into the dealership's inventory. Mr. Dohman inspected the vehicle, which was transferred from another dealership, for damage and removed the keys from the vehicle. Pursuant to the check-in procedure, one set of keys would have been removed from the vehicle and taken to the office where tags to reference the keys are processed. One set of keys would have been left in the vehicle so that it could be moved to the parking and display lot, which consisted of an area behind a barbwire and chain-link fence. The fence had a padlock, and sales managers and managers had keys to the lock. If the gate needed to be unlocked in order to show one of the new vehicles in the rear, the salesman would loan the keys out.
Mr. Dohman testified that the Chevrolet Blazer was transferred to their dealership on a Friday afternoon in October, 1998. By the following Saturday morning, it was missing. One set of keys to the vehicle remained in the office, along with its tags. Mr. Dohman last saw the vehicle at the wash rack.
Mr. Dohman further testified that the dealership had lost two vehicles from behind the fence in consecutive months (either October or November of 1998). Because of the two thefts, video cameras had been added for security, and the dealership also replaced the code on the locks for the first time in seven years.
Mr. Dohman testified that he had knowledge concerning the license plate found on the Blazer, which was later recovered. While a wrecked Chevrolet truck belonging to Mr. Jerry Richard was in the dealership's body shop for repairs, Mr. Richard started receiving parking tickets on *321 the wrecked truck. The tickets were for parking violations on Toulouse Street in New Orleans. However, the vehicle was not drivable because it had received a large hit from the rear. Mr. Dohman notified the New Orleans Police Department that the vehicle could be in that area. Mr. Dohman also investigated and discovered the license plate to the vehicle, which had previously been kept in the storage area behind the body shop, was no longer in the body shop. The vehicle to which the license plate had been attached was a 1993 truck with the rear axle ripped off. This vehicle was waiting to be repaired.
Mr. Dohman never saw the Chevrolet Blazer again after it disappeared off the lot. The insurance company retrieved the vehicle. According to Mr. Dohman, the Chevrolet Blazer had a retail value of $27,000.00. Even with the added miles and depreciation for being stolen, the value of the vehicle, according to Mr. Dohman, would have been $20,000.00.
Mr. Dohman was told that the defendant was arrested while in the Blazer. He knew the defendant because the defendant worked at the Dohman dealership as a salesman from February of 1996 until his firing in October of 1996. During that time, the defendant would have had access to the keys used to unlock the gate. Mr. Dohman never gave the defendant permission to use or possess the 1999 white Chevrolet Blazer. The defendant was not an employee at the time of the theft, and Mr. Dohman had not seen the defendant between October 1996 and October 1998. The dealership had employed ten to fifteen salesmen between October of 1996, when the defendant left, and October of 1998.
Officer Judson Clark testified that he arrested defendant in the late evening hours of December 23, 1998, in the area of St. Louis and North Rampart Streets. He observed defendant going through items in the rear compartment of a white Chevy Blazer.[2] Because the officer knew of numerous auto thefts and burglaries in the area, he pulled up behind the vehicle, exited his vehicle, and approached the Chevrolet Blazer on the right passenger side. He asked defendant to exit the vehicle and show his driver's license. The defendant was unable to provide a Louisiana license but stated that it was in his apartment.
Defendant then explained that the vehicle belonged to him; he stated that his father had purchased the car a couple of weeks earlier. However, defendant had no papers for the vehicle and did not know where the papers for the vehicle could be found. To verify ownership, the officer called the station and asked the desk officer to run the plate through SLICKS, a nationwide computer system that provides information on vehicles. The investigation revealed that the vehicle had been reported stolen from Morgan City. The officer then advised defendant of his rights and arrested him for being in possession of stolen property, which was the "stolen license plate." The officer then copied the vehicle identification number, ran it through the system, and learned the vehicle had been reported stolen from Morgan City also. Upon receiving this information, Officer Clark told defendant the vehicle had been reported as stolen and advised defendant he was also under arrest for being in possession of a stolen vehicle. Defendant did not ask to call his father. Officer Clark identified the stolen plate that came off the Chevrolet Blazer. The car was towed by the city and impounded. At the time defendant was detained, the keys to the vehicle were in the ignition.
Following Officer Clark's testimony, the State rested. The defense called no witnesses. As noted above, the jury found *322 defendant guilty of possession of stolen property with a value exceeding five hundred dollars.

ERRORS PATENT:
A review of the record for errors patent reveals none. However, defendant argues that the trial court failed to comply with La.C.Cr.P. art. 930.8, subd. C, which states, "At the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post conviction relief." Defendant argues that the case must be remanded to the trial court to give written notice of the prescriptive period. However, relying upon State ex rel. Glover v. State, 93-2330 (La.9/5/95), 660 So.2d 1189, 1201, this court has held that the language in art. 930.8, subd. C is merely precatory and does not bestow an enforceable right upon an individual defendant. Accordingly, failure to comply with art. 930.8, subd. C is not an error patent and requires no action on the part of the appellate court. State v. Jones, 97-2217, (La. App. 4 Cir. 2/24/99), 731 So.2d 389, writ denied, 99-1702 (La.11/5/99), 751 So.2d 234; State v. Guy, 95-0899 (La.App.4 Cir.1/31/96), 669 So.2d 517, writ denied, 96-0388 (La.9/13/96), 679 So.2d 102. Nevertheless, in the interest of judicial economy, we note that La.C.Cr.P. art. 930.8, subd. A states the applicable time period in which defendant may file an application for post-conviction relief.

ASSIGNMENT OF ERROR:
In his sole assignment of error, defendant argues the evidence was insufficient to support a conviction for possession of stolen property valued at five hundred dollars or more. He specifically argues that the State failed to establish the necessary value for the vehicle and also his criminal intent.
In State v. Ash, 97-2061 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, writ denied, 99-0721 (La.7/2/99), 747 So.2d 15, this court summarized the standard of review that applies when a defendant claims that the evidence produced to convict him was constitutionally insufficient:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact's determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4 Cir.1989). When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proved such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
*323 In order to sustain a conviction under La. R.S. 14:69, the State must prove that (1) the property was stolen; (2) the property was worth more than five hundred dollars; (3) the defendant knew or should have known that the property was stolen; and (4) the defendant intentionally received the property. La. R.S. 14:69; State v. Hoskin, 605 So.2d 650 (La.App.4 Cir. 1992); State v. Lampton, 97-2616 (La. App. 4 Cir. 3/10/99), 729 So.2d 754.
In the case at bar, defendant first argues that the State failed to prove that the vehicle was worth more than five hundred dollars. Mr. Dohman, the general manager of the dealership that owned the 1999 Chevrolet Blazer allegedly found in defendant's possession, processed the vehicle when it was transferred to the dealership. He testified that it had a retail value of $27,000.00. He further testified that, even with the added miles and depreciation for being stolen, the value of the vehicle would have been $20,000.00.
Testimony of the owner as to the purchase price of the vehicle is generally sufficient to establish the value of the vehicle if it is clear and uncontradicted. In State v. Hoskin, supra, this court held that testimony by the owner of the vehicle that the vehicle was valued at three thousand dollars at the time it was stolen, well-maintained, in good running condition, and not dented or damaged, was sufficient to establish that the vehicle was worth over five hundred dollars at the time of the offense. The court distinguished State v. Williams, 598 So.2d 1265 (La.App. 4 Cir.1992), affirmed in part, modified in part and remanded, 610 So.2d 129 (La.1992), noting that, in "Williams, the State offered no evidence, direct or circumstantial to prove the value of the stolen car." 605 So.2d at 652.
Defendant, however, does not contest Mr. Dohman's testimony concerning the value of the vehicle stolen from the dealership. Rather, he contends that the State failed to prove the value of the vehicle in which Officer Clark found the defendant. He notes that Officer Clark never stated that the Chevy Blazer in which defendant was found was the 1999 Chevrolet Blazer that was stolen. While it is true that Officer Clark apparently never finished his description of the year of the Blazer, other testimony supports a finding that the Blazer in which defendant was found was the 1999 Chevrolet Blazer taken from the Dohman dealership in Morgan City. Officer Clark testified that he copied the license plate number and the vehicle identification number and found that both the license plate and the vehicle had been reported stolen from Morgan City, the city wherein the Dohman dealership was located. A rational fact finder could have easily concluded that the vehicle being referred to in the testimony of both Officer Clark and Mr. Dohman was the same 1999 white Chevrolet Blazer and, therefore, that the vehicle was worth much more than five hundred dollars.
Defendant next argues that the State failed to prove that he knew or should have known the vehicle in which he was found was stolen. Defendant contends that he did not know, and could not have known, that it was stolen. He notes that Officer Clark testified that the keys were in the ignition and that the defendant stated that his father had purchased the vehicle for him. He argues that there was no evidence of a cracked or defeated steering column or ignition, a driver without the benefit of a key, or other evidence that he wrongfully possessed the vehicle. Accordingly he argues no evidence was presented to show that he knowingly possessed the stolen vehicle.
However, Officer Clark's testimony that defendant never produced a single document supporting his claim of legitimate ownership was evidence that defendant had not obtained the car lawfully. The absence of such documents tended to show, at the very least, that defendant should have known that the car's history was suspect; and its history was confirmed *324 by the officer's processing of the vehicle identification number. Defendant also ignores the testimony about his former employment at the dealership, which indicated that he once had access to the keys controlling the area from which the vehicle was stolen. Furthermore, the fact that the license plate on the Blazer had also been reported stolen from the same dealership tended to show that the theft involved a person with close connections to the dealership.
In sum, a rational trier of fact would have been hard-pressed to develop a reasonable explanation for defendant's undocumented possession in New Orleans of a vehicle (and license plate) stolen from the same dealership in West Monroe in which he once worked. The Jackson standard is accordingly met in this case because, considering the totality of the direct and circumstantial evidence in the light most favorable to the State, a rational trier of fact could have found that defendant knew or should have known that the vehicle was stolen. We therefore affirm.
AFFIRMED.
NOTES
[1] Failure to arraign the defendant is not an error if the defendant goes to trial without objecting. La.C.Cr.P. art. 555. The defendant made no objection prior to trial.
[2] Officer Clark started to give the year of the vehicle but was interrupted by a juror who could not hear. When the testimony resumed, he failed to complete his sentence regarding the make of the vehicle. However, his later testimony revealed that the vehicle in which the defendant was found was a Chevy Blazer that had been reported stolen from Morgan City.