|, DAVID S. GORBATY, Judge.
Frank E. Moses appeals his conviction for simple arson and illegal possession of a stolen thing valued at $500 or more on the grounds that he did not knowingly and voluntarily waive his right to trial by jury, *85 and that the evidence was insufficient to support his conviction on the illegal possession of stolen things. For the following reasons, we conditionally affirm the convictions and sentence, and remand the case for a determination of whether Mr. Moses validly waived his right to trial by jury.

STATEMENT OF THE CASE:

Frank E. Moses was charged by bill of information on April 29, 1998 with illegal possession of a stolen thing valued at $500 or more, a violation of La.Rev.Stat. 14:69(B)(1), and simple arson, with damage less than $500, a violation of La.Rev.Stat. 14:52(C). Following a bench trial, Moses was found guilty as charged. On July 17, 1998, the trial court adjudicated Moses a second-felony habitual offender as to the simple arson count. Moses waived all legal delays and was sentenced to three years at hard labor on the simple arson conviction and seven and one-half years at hard labor as a second-felony habitual offender on the conviction for illegal possession of stolen things.
12Moses was granted an out of time appeal.

FACTS:

New Orleans Police Officer Michael J. Hamilton testified that on March 4, 1998, he was on routine patrol with his partner, Officer Michael Pierce, when they attempted to stop a red-pickup truck being driven in a reckless manner. The driver, later identified as Frank Moses, sped up when the officers activated their lights and sirens. At one point the officers eased up their pursuit for public safety reasons, and then came upon the truck in an open field or lot. Moses jumped out of the truck with a gasoline can, doused the truck and ignited it with a match. Officer Hamilton extinguished the fire. After checking the license plate, Officer Hamilton determined that the plate on the truck was registered to Moses, but was for an automobile. A house key was in the ignition. Moses was listed as residing in a nearby trailer park, which was located in the direction he fled. Officer Hamilton and his partner went to the trailer park and asked Moses’ mother of his whereabouts. She said he was not inside the trailer, however, a tow truck driver in the area told the officer that he had seen Moses enter the trailer. Police surrounded it and, after a fifteen-minute standoff, Moses exited and was placed under arrest.
Officer Hamilton testified on cross-examination that he observed Moses driving the truck, and that he was alone. He was certain that Moses was the same person he saw driving the truck and dousing the truck with gasoline, because he looked directly into Moses’ face as he doused the truck, and, when arrested, Moses was wearing the same clothes as the person who drove the truck and set it on fire, including a distinctive pair of red Reebok tennis shoes.
Timothy Seuzeneau, an Orleans Parish District Attorney’s Office investigator, identified a computer printout reflecting that the truck was registered lato Tim’s Marine, Inc., located in Violet, Louisiana. A second computer printout showed that license plate number FEJ 146 was registered to Frank E. Abrams at 7701 Chef Menteur Highway, Lot 25.
John Kamlde testified that his vehicle was stolen on February 15, 1998 from a Home Depot parking lot while he was shopping inside. He purchased the vehicle in October 1992 for $18,000 to $19,000. “Tim’s Marine” was his business. Kamlde did not recognize the house key police found in the ignition. He had not given anyone permission to use his vehicle that day, and had never given Moses permission to drive his vehicle.
*86 Lenore Guillará, Moses’ girlfriend and the mother of his child, testified that Moses was with her all day on March 4, 1998. Moses had gone with her and their child to his mother’s trailer. Some ten to fifteen minutes later, she and the baby left with Moses’ mother, while Moses remained in the trailer. Some police officers asked her and Moses’ mother if they had seen someone coming from the back of the trailer park. They replied that they had seen a tow truck. Ms. Guillará admitted that Frank Abrams was Moses’ father. She also admitted that Moses was wearing his red Reebok tennis shoes on the day he was arrested.

ERRORS PATENT:

A review of the record reveals none.

ASSIGNMENT OF ERROR NO. 1:

In his first assignment of error, Moses claims that the trial court failed to obtain his knowing and voluntary waiver of his right to trial by jury. The record reflects that the trial court advised Moses of his right to trial by judge or jury at his May 11, 1998 arraignment. However, there is nothing in the record to reflect that Moses waived his right to trial by jury.
|4La.Code Crim. Proc. art. 780(A) provides that a defendant charged with an offense other than one punishable by death may “knowingly and intelligently waive a trial by jury and elect to be tried by a judge,” and that “[a]t the time of arraignment, the defendant shall be informed by the court of his right to waive trial by jury.” The waiver of the right to trial by jury cannot be presumed. State v. Comeaux, 2000-0054, p. 4 (La.App. 4 Cir. 11/21/00), 774 So.2d 322, 324. The waiver must be established by a contemporaneous record setting forth the articulated appraisal of that right followed by a knowing and intelligent waiver by the accused. State v. Wolfe, 98-0345, p. 6 (La.App. 4 Cir. 4/21/99), 738 So.2d 1093, 1097, writ denied 99-1460 (La.12/10/99, 756 So.2d 281), cert. denied 529 U.S. 1115, 120 S.Ct. 1976, 146 L.Ed.2d 805 (2000).
In State v. Nanlal, 97-0786 (La.9/26/97), 701 So.2d 963, the Louisiana Supreme Court indicated that where the record does not reflect a valid waiver of a defendant’s right to trial by jury, the proper procedure is to remand the case to the district court for an evidentiary hearing to determine whether the defendant validly waived that right.[1] If the evidence showed the defendant did not make a valid waiver of his right to trial by jury, the district court must set aside the defendant’s conviction and sentence, and grant him a new trial.
The Nanlal court cited with approval State v. Bissett, 451 So.2d 181 (La.App. 1 Cir.1984), where the record was silent regarding a waiver, and the defendant raised claims of sufficiency of the evidence and an allegedly erroneous evidentiary ruling in addition to the waiver issue. The Bissett court addressed the merits of all the claims, affirmed the conviction, vacated the sentence on one | ficount, and remanded the case for an evidentiary hearing on the waiver issue. 451 So.2d at 182, 185.
Because the record contains no evidence that Moses waived his right to trial by jury, we remand this matter to the trial court for an evidentiary hearing to determine whether Moses knowingly and intelligently waived his right to trial by jury.

*87
ASSIGNMENT OF ERROR NO. 2:

In his second assignment of error, Moses avers that the evidence was insufficient to establish that the victim’s truck was valued at five hundred dollars or more.
This Court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mus-sall; Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of | fithe evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
98-0011 at pp. 13-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
Moses was convicted of illegal possession of a stolen thing, the truck, valued at $500 or more, in violation of La.Rev.Stat. 14:69(B)(1). Value is an essential element of the crime charged, and the State must present evidence of the value of the stolen thing at the time of the theft. State v. Hoskin, 605 So.2d 650, 652 (La.App. 4 Cir.1992). The owner’s testimony as to the purchase price of the vehicle is generally sufficient to establish the value of the vehicle if it is clear and uncon-tradicted. State v. Thomas, 99-1955, p. 8 (La.App. 4 Cir. 1/26/00), 752 So.2d 318, 323.
Moses cites this Court’s decision in State v. Williams, 598 So.2d 1265 (La.App. 4 Cir.), reversed in part, 610 So.2d 129 (La. 1992), where the defendant was convicted of illegal possession of a stolen thing, a 1980 Cadillac, valued at $500 or more. In finding the evidence insufficient to sustain *88 the conviction, this Court stated:[2]
|7In this case, the only evidence presented by the State concerning the value of the stolen car was the testimony of Mary Petty, the car owner, who testified that she had purchased the 1982[sic] Cadillac car in 1980 for $25,200. She also indicated that she had some unspecified maintenance problems with the car and that she intended to trade it in. When the car was recovered, it had a dent on the left front side and a hole in the steering column.
The State failed to introduce any photographs, estimates, original bill of sale or testimony to indicate the value of the car at the time of the theft. Thus, the State presented no trustworthy evidence of any kind to indicate the car’s worth.
The State points out that the cases cited by the defendant involved property “other than an automobile,” apparently asking this court to fashion a rule requiring a different type of proof depending on the type of property stolen. We decline to do so. The important issue is the quality of the evidence presented. Courts traditionally require that the value of stolen property be proved through the introduction of something more than the testimony of the owner, such as photographs, direct evidence, receipts, or the objects themselves. See State v. Coleman, 590 So.2d 844 (La.App. 4th Cir.1991) (direct evidence); State v. Williams, 580 So.2d 448 (La.App. 5th Cir.1991) (price tags); State v. Armstead, 572 So.2d 762 (La.App. 4th Cir. 1990) (photographs); State v. Elie, 567 So.2d 180 (La.App. 4th Cir.1990) (photographs); State v. Madison, 535 So.2d 1024 (La.App. 2d Cir.1988) (photographs); State v. Valery, 532 So.2d 536 (La.App. 1st Cir.1988) (photographs); State v. Dominick, 506 So.2d 193 (La. App. 5th Cir.1987) (photographs).
When the degree of the crime is based on the value of the property stolen, the State must present more than the self-serving testimony of the owner of the property to meet its burden of proof on this issue. The State failed to present reliable evidence of the value of the property in this case.
598 So.2d at 1266-1267.
However, in State v. Hoskin, supra, the victim estimated that his 1984 Monte Carlo was worth $3,000 on the day it was stolen, July 23, 1990. He also testified that it was in good working condition and had no dents. This Court found the evidence sufficient to establish that the value of the victim’s vehicle was at least five hundred dollars, noting that the unambiguous albeit self-serving testimony of the owner had neither been impeached nor contradicted. This court distinguished Williams on the ground that the State failed to offer any direct or | Scircumstantial evidence to prove the value of the stolen vehicle. This court also clarified its decision in Williams, stating:
For the purpose of clarification, we hold that when the degree of the crime is based on the value of the stolen property possessed, the self-serving testimony of the owner is sufficient if it is clear and uncontradicted. If the testimony is devoid of the value of the property by the owner the State must present additional evidence to prove the value is clearly in excess of the statutory amount.
605 So.2d at 652.
In the instant case, the owner of the stolen truck, Mr. Kamlde, testified that he *89 purchased the truck around October 1992 for $18,000-$19,000. Moses presented no contradictory evidence. Moses was seen driving the vehicle on March 4, 1998. Thus, Mr. Kamlde had owned the truck for five and one-half years at the time Moses was seen in possession of it. Mr. Kamlde was not asked to give an estimation of the value of the truck as of the date it was stolen or as of the date Moses was seen driving it. Further, Mr. Kamlde did not testify as to the condition of the truck or the mileage on it.
However, Officer Hamilton identified five photographs of the truck taken by police at the scene. The photographs depict a red GMC extended-cab “stepside” pickup truck with chrome bed rails. The vehicle appears to be in good condition. One photograph of the inside of the truck’s bed shows numerous scrapes, presumably from transporting cargo, and scorch marks from the fire started by Moses. Two photographs of the rear of the truck show small scrapes and scratches on the outside of the tailgate, but no noticeable dents. The chrome rubber-topped rear step bumper is in good condition, and it has a tow bar underneath it with two different-sized trailer hitch balls on it. One of these photographs shows a very limited view of the rear passenger side of the truck, which had no damage. One | gphotograph depicts almost the full length of the driver’s side of the truck and does not show any damage. One photograph of the interior shows a partial view of the cloth front bucket seats, which appear in good condition, clean floor carpeting, an intact dashboard, and the steering column, which was apparently damaged during the theft. There were no photographs presenting a horizontal view of the passenger side or a frontal view. Timothy Seuzeneau testified that the stolen vehicle was a 1992 model. Mr. Kamlde did not testify that he purchased the truck new, although it was a 1992 model purchased in October 1992. The truck obviously was in a drivable condition while in Moses’ possession. The pickup truck was registered to a business, and while the scraped-up cargo bed indicated considerable use, the exterior and cab were in good condition.
Viewing all the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the pickup truck, drivable and in apparent good condition, purchased for $18,000-$19,000 five and one-half years before being found in Moses’ possession, had a value of $500 or more at the time of the offense.
Accordingly, Moses’ conviction is conditionally affirmed. The matter is remanded for an evidentiary hearing to determine whether Moses knowingly and intelligently waived his right to trial by jury. If the evidence adduced at the hearing indicates that Moses did not properly waive his right to a jury trial, the trial court must set aside the convictions, and grant Moses a new trial. Moses’ right to appeal any adverse decision on the waiver issue is preserved.
CONVICTION CONDITIONALLY AFFIRMED; AND REMANDED.

. See also State v. Aragon, 98-0402 (La.6/26/98), 719 So.2d 486, order clarified, 98-0402 (La.9/18/98), 724 So.2d 757 (remanding to the court of appeal to reconsider, in light of Nanlal, decision relating to waiver of right to trial by jury).

. In State v. Williams, infra, the Louisiana Supreme Court held that this court erred in reversing defendant’s conviction outright, instead of reducing the verdict to a lesser and included offense supported by the evidence, the misdemeanor offense of illegal possession of stolen things valued at less than $100.