L GORBATY, J.
Melvin Phillips appeals his conviction of illegal possession of stolen property valued at least $500, and his sentence of ten years at hard labor as a second offender. For the following reasons, we vacate the conviction and sentence, enter a conviction of illegal possession of stolen property valued under $100, and remand the matter for resentencing.
STATEMENT OF CASE:
On August 11, 2003 the appellant Melvin Phillips was charged with one count of illegal possession of stolen property valued at $500 or more.[1] At the conclusion of a two-day trial, a jury found him guilty as charged. The State filed a multiple bill *339 against Phillips on January 15, 2004, and the matter was reset. After a hearing, the court found Phillips to be a second offender, and subsequently sentenced him to serve ten years at hard labor. The court noted the defense |2objection to the sentence and granted Phillips’ motion for appeal. The record was lodged in this court on November 22, 2004, and after supplementation of the record, the appellant filed his brief on March 16, 2005. The State filed an untimely brief on March 30.
FACTS:
Vera Rogers testified that late on the evening of July 26, 2003 she parked and locked her Chrysler van in front of her residence at 2117 New. Orleans Street. Early the next morning she noticed the van was missing. She immediately notified the police and gave a report by telephone later that afternoon. On July 29 she received a call telling her the van had been recovered on Basinview Drive. She testified she went to the scene and saw her van being loaded onto a tow truck. She testified the van was running at the time, but there were no keys in the ignition. In addition, the hood of the' van had been damaged. She stated she saw no broken windows on the van. She testified that after observing the two suspects, she told the police that she did not know either Melvin or Chad Phillips. She admitted she did not see who stole the van.
Officer Kenneth Hookfin, Jr., testified that he and his partner, Officer Kirk La-Branch, were patrolling in eastern New Orleans on the evening of July 29, 2003. He testified that the day before they had learned of the stolen Chrysler van with handicapped plates. At approximately 8:45 p.m. as they were driving on Down-man Road, they spotted a Chrysler van with handicapped plates matching the description of the stolen van. They followed the van while they ran the license plate number and found it corresponded to the stolen van. Officer Hookfin testified they activated the siren and lights, but the van continued onto Dwyer Street and then onto Basinview, where it turned into the driveway at 5140 |sBasinview. Officer Ho-okfin testified that the driver of the van, whom he identified as Melvin Phillips, and the passenger of the van, whom he identified as Chad Phillips, got out of the van and ran in separate directions. Officer Hookfin testified he chased Chad Phillips, apprehended him four to five blocks away, and read him his rights. His partner chased Melvin Phillips and captured him. Officer Hookfin testified they returned the brothers to the van, which was running, but had no keys in the ignition. Officer Hookfin stated that they called the owner of the van, who told them that she did not give anyone permission to use her van. The officers then called for the crime lab to take photographs of the van, and these photographs were introduced at trial. Off. Hookfin admitted that there were no broken windows on the van and that the steering column was not broken. However, he identified one photograph that showed the steering column with no key inserted, and he insisted the van was running at the time the picture was taken.
Officer Kirk LaBranch’s testimony concerning the stop of the van basically tracked that of Officer Hookfin. In addition, Officer LaBranch testified that they did not activate their lights and sirens until immediately prior to the van’s turn onto Basinview, and approximately twenty seconds later the van pulled into the driveway. Officer LaBranch testified that they parked the police car across the street from the van, and as he and Officer Hook-fin approached, the passenger of the car exited and ran. As Officer Hookfin gave chase, Officer LaBranch turned to the driver, whom he identified as Melvin Phillips, and ordered him to get out of the van. Melvin Phillips complied, but instead of *340 putting up his hands and getting on the ground as ordered, he ran. Officer La-Branch testified he chased Melvin through a few neighboring yards, and when Melvin jumped a fence he was apprehended by other officers who had been alerted to the scene. Officer | ¿LaBranch testified that they returned Melvin to the van, advised him of his rights, handcuffed him, and placed him in the back of the police car. Officer LaBranch testified that although the van was still running, there was no key in the ignition. He called for the crime lab as well as for someone from the SPCA to come attend to four pit bull puppies that were inside the van. Officer LaBranch admitted that he did not ask the suspects where they got the van, but he indicated that Melvin Phillips was concerned about the puppies. Officer LaBranch described the van’s exterior as being in good condition, and he testified that the van had no broken windows or door locks. He described the steering column as being “neatly” defeated, explaining that no wires were hanging from the steering column.
Chad Phillips insisted he was the driver of the van, not his brother Melvin. Chad testified he had borrowed the van from a man he knew only as “Black” to run an errand at a mall. He testified he had seen “Black” driving the van three or four days prior to borrowing it from him. Chad testified he then picked up Melvin and the puppies from a friend’s house, and he was going to another friend’s house to sell one of the puppies. He testified he did not know the van was stolen, and he insisted that the van had a key in the ignition when he was driving it. He stated he did not know why there was no key in the ignition when the photographs were taken, theorizing that the police took the key out prior to taking the photograph. He insisted that he did not notice the police car trying to stop the van until after he had pulled into the driveway and saw the officers. He testified he ran when he saw the officers because they had pulled their guns. He insisted that he had turned off the van’s ignition before he exited the van, and he further stated that his brother Melvin was still in the van when he exited and ran.
|RAt the close of its case, the State moved to file the photographs of the van into evidence; however, the defense objected because the photographs had not been timely produced in response to the defense’s motion for bill of particulars. The assistant district attorney admitted that he had the photographs in his possession for at least a week prior to trial, but had not shown them to defense counsel until the first day of trial. The district court sustained the objection, and the photographs were not admitted into evidence.
DISCUSSION:
A. Errors Patent
A review of the record reveals no patent errors.
B. Assignments of Error:
By his first assignment of error, the appellant contends that there was insufficient evidence to support his conviction for possession of stolen property valued over $500. Specifically, he alleges that the State failed to show that the value of the van was over $500.
This court set forth the test for determining the sufficiency of evidence to support a conviction in State v. Armstead, 2002-1030, pp. 5-6 (La.App. 4 Cir. 11/6/02), 832 So.2d 389, 393-394:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757
*341 (La.App. 4 Cir.1991). Howevér, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to |,;the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall, 523 So.2d 1305; Green, 588 So.2d 757. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson, but rather is an evi-dentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
The appellant was charged with and convicted of illegal possession of stolen property valued at $500 or more in violation of La. R.S. 14:69. As per State v. Thomas, 99-1955, p. 7 (La.App. 4 Cir. 1/26/00), 752 So.2d 318, 323, the elements of this offense are: “the property was stolen; (2) the property was worth more than five hundred dollars; (3) the defendant knew or should have known that the property was stolen; and (4) the defendant intentionally received the property.”
Here, the State proved that the van was stolen and that the appellant and his brother intentionally received the van. In addition, the evidence was sufficient to show that the appellant and his brother should have known that the van was stolen, given the fact that the van was running even though no keys were in the ignition. Rlndeed, the appellant does not argue that the State failed to show that he knew the van was stolen. Instead, he argues that the State failed to prove that the van was worth at least $500.
In support, the appellant cites State v. Riley, 98-1323 (La.App. 4 Cir. 8/4/99), 744 So.2d 664, as an example of what is necessary to prove value. The owner testified he purchased the 1987 Oldsmobile in 1996 for $3000, and he described the car as in very good condition. The car was stolen in 1997, and the defendant wrecked it during a chase that led to his apprehension. This Court found that although the car was ten years old at the time it was stolen, the owner’s testimony as to the value of the car when he purchased it and the condition of the car when the defendant was spotted in-it was sufficient to prove the ear was valued over $500.
In State v. Williams, 610 So.2d 129 (La.1992), the victim testified that she had purchased her car for $25,000 ten years before it was stolen. She also testified the car had maintenance problems at the time it was stolen and that she had intended to replace it. The defendant, who was found *342 with the car, was convicted of illegal possession of stolen property valued over $500. On appeal, he argued the State failed to prove the value of the car at the time the defendant was found in possession of it. This Court agreed and reversed the defendant’s conviction and sentence, entering a verdict of acquittal. State v. Williams, 598 So.2d 1265 (La.App. 4 Cir.1992). On writ application, the Supreme Court found that this Court erred by acquitting the defendant, finding that the ear had some value, and it entered a verdict of guilty of illegal possession of stolen property valued less than $100 and remanded for resentencing.
In State v. Moses, 2001-0909 (La.App. 4 Cir. 12/27/01), 806 So.2d 83, the owner of the stolen truck testified that he purchased the truck in 1992 for $18,000 to $19,000, five and a half years prior to the day the defendant was found in possession of it. The State presented no evidence as to its condition on that date, but it offered photographs of the truck that were taken after it had been recovered, and these photographs were shown to the jury. This Court reviewed the photographs and determined that the truck’s condition was such that the jury could have found that the truck was worth at least $500.
In State in Interest of B.J., 617 So.2d 238 (La.App. 5 Cir.1993), the defendant was convicted of possessing a stolen vehicle valued at $500 or more. There was no testimony as to the actual value of the stolen automobile, but the appellate court found that it could value the vehicle at greater than $100 but less than $500 based upon the vehicle’s type, age, and condition.
In State v. Hoskin, 605 So.2d 650 (La.App. 4 Cir.1992), this Court found sufficient evidence of value to support the conviction. The victim testified the car was only six years old when it was stolen, was in good working condition, and had no dents. The defendant crashed the car just prior to being apprehended, and the victim testified it cost $3000 to repair the car after he got it back. This Court found this evidence was sufficient to prove the car was valued over $500, and it affirmed the defendant’s conviction.[2]
Here, there was no testimony as to the value of the van. The witnesses merely described the van as a silver Chrysler van with a handicapped license plate. RNo one testified as to the year of the van, and the owner did not testify how long she had owned the van or how much she paid for it. The only possible evidence as to the value of the van were the photographs taken of the van which were identified by the State’s witnesses and shown to the jury. Unfortunately, when the State moved to admit the photographs into evidence, the district court was forced to sustain the defense’s objection because the State had failed to timely comply with the defense’s discovery request. Thus, there is even less evidence for this court’s review than that in Moses, where the photographs of the truck were available and this Court could see the truck’s condition and determine that the jury could find that the truck was worth at least $500, or for the court’s review in State in Interest of B.J., where the court knew the vehicle’s type, condition, and age. Here, it is unknown how old Ms. Roger’s van was, how long she had had it, or what she paid for it, and this court cannot determine its condition due to the fact that the photographs of it are not in evidence. Thus, as per the Supreme Court’s opinion in Williams, the greatest offense for which this Court can find suffi *343 cient evidence would be the lesser included offense of illegal possession of stolen property valued under $100. This assignment of error has merit.
II.
By his second assignment of error, the appellant contends that the trial court imposed an excessive sentence. However, because we find that there was insufficient evidence to prove the crime of which appellant was convicted, this assignment of error is moot.
| Accordingly, based on the foregoing, we vacate appellant’s conviction and sentence, enter a conviction of illegal possession of stolen property valued under $100, and remand this matter for resentencing.
ORIGINAL CONVICTION AND SENTENCE VACATED; CONVICTION FOR ILLEGAL POSSESSION OF STOLEN PROPERTY VALUED UNDER $100 ENTERED; AND, REMANDED FOR RESENTENCING.

. Chad Phillips was also charged in the same bill with the same crime. A jury found him guilty as charged, and the court sentenced him to four years at hard labor, suspended, and placed him on three years probation. He waived his right to an appeal.

. See also State v. Thomas, 99-1955 (La.App. 4 Cir. 1/26/00), 752 So.2d 318, where this Court found, sufficient evidence of value over $500, even though the defendant’s claim as to value was that the State failed to show the Blazer recovered was the same one stolen from the dealership.